UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EMAD FAHMY,                                      :

                Plaintiff,          :         04 Civ. 1798 (DLC) (GWG)

   -v.-                                          :         <u>OPINION AND ORDER</u>

DUANE READE, INC. and                            :
DUANE READE INTERNATIONAL, INC.
                                       :
                Defendants.
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Emad Fahmy has moved for leave to amend his complaint to add new claims against defendants Duane Reade, Inc. and Duane Reade International, Inc. (collectively, "DRI"), as well as add four individual defendants. DRI opposes the motion. For the reasons stated below, Fahmy's motion is granted in part and denied in part.

I. <u>BACKGROUND</u>

    A. <u>Procedural History</u>

Fahmy, who identifies himself as "an African-American male of Egyptian ancestry," filed his original complaint against DRI in March 2004, alleging employment discrimination in violation of 42 U.S.C. § 1981 ("Section 1981") and 42 U.S.C. § 2000e <u>et.</u> <u>seq.</u> ("Title VII"). <u>See</u> Verified Complaint, filed Mar. 5, 2004 (Docket #1) ("Compl."), ¶ 5. Fahmy's Complaint alleged that DRI failed to promote him to the position of District Manager and compensated him less than his white colleagues because of his race and national origin, <u>id.</u> ¶¶ 11-25, and retaliated against him for filing complaints regarding unequal pay for minorities at DRI internally and with the Equal Employment Opportunity Commission ("EEOC"), <u>id.</u> ¶¶ 26-52.

Fahmy was initially represented by the firm Manuel & Jones, P.C. but the firm was permitted to withdraw on September 24, 2004 and Fahmy proceeded pro se for a time. See Order, filed Oct. 5, 2004 (Docket #15). In March 2005, Andrew Schatkin entered a notice of appearance on behalf of Fahmy. See Notice of Appearance, dated Mar. 4, 2005. Shortly thereafter, Schatkin requested permission to file an amended complaint and an extension of the discovery deadlines. See Letter from Andrew J. Schatkin to the Court, dated March 28, 2005. This Court granted plaintiff permission to file a motion to amend the complaint by April 15, 2005, and extended other discovery deadlines as well. See Order, filed April 8, 2005 (Docket #27) ("April 8 Order"). On April 15, 2005, Fahmy filed the instant motion. See Notice of Motion by Plaintiff Emad Fahmy for Leave to Amend Complaint, filed Apr. 15, 2005 (Docket #30) ("Notice of Motion"); Plaintiff's Memorandum of Law in Support of Motion to Amend, filed Apr. 15, 2002 (Docket #32).

DRI has filed its opposition to Fahmy's motion, arguing that it is untimely as well as addressing the motion on the merits. See Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend the Complaint, filed Apr. 29, 2005 (Docket #33) ("DRI Br."). Fahmy has replied to DRI's opposition. See Plaintiff's Reply to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend the Complaint, dated May 24, 2005 (Docket #53) ("Pl. Reply"). In addition, each party subsequently submitted letters in further support of their positions. See Letter from Daniel P. Goldberg to the Court, dated June 13, 2005 ("DRI June 13 Letter"); Letter from Andrew J. Schatkin to the Court, dated June 27, 2005 ("Fahmy June 27 Letter").

B. Content of Proposed Amended Complaint

The proposed Amended Complaint is virtually identical to the original Complaint, except that (1) it names four individual defendants, and alleges that these individuals denied Fahmy promotions on the basis of his race and national origin in violation of Section 1981, see Proposed Amended Complaint, dated Apr. 13, 2005 ("Am. Compl."), ¶¶ 28-31; (2) it adds Section 1981 as an additional basis for relief with respect to the complaint's existing retaliation claim, id. ¶¶ 39-65; and (3) it adds an entirely new claim of intentional infliction of emotional distress, id. 66-67.[1]

The four defendants plaintiff seeks to add are: Thomas Ordemann, Vice President of Store Operations; Gregory Calvano, District Manager; Jerry Ray, Senior Vice-President of Pharmacy and Store Operations; and James Rizzo, Vice-President of Human Resources.

The facts alleged in the proposed amended complaint – which are the same as those in the original complaint – are as follows:

Fahmy has worked for Duane Reade as a Store Manager since approximately July 3, 2001. Id. ¶ 7. While employed at Duane Reade, he received a performance rating of "Exceeds Standards." Id. ¶ 9. Fahmy applied for a promotion to the District Manager position in October

---

[1] The proposed amended complaint also amends the first cause of action (failure to promote) and the third cause of action (discriminatory pay) – to add "national ancestry" and "national origin" to the existing racial discrimination claim. See Am. Compl. ¶¶ 17-26. DRI does not address either of these two amendments, although – in the context of its discussion of the individual defendants – it argues that there is no cognizable claim for discrimination on the basis of "national origin" under Section 1981. See DRI Br. at 9. Under Title VII, there seems to be no difference between national ancestry and origin. See Espinoza v. Farah Mfg. Co., 414 U.S. 86, 88 (1973) (defining "national origin" as "the country where a person was born, or, more broadly, the country from which his or her ancestors came). Section 1981, on the other hand, "encompasses discrimination based on ancestry or ethnic characteristics," but not on the basis of national origin. Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998) (internal citations omitted); accord Franchitti v. Bloomberg, L.P., 2004 WL 2366183, at *3-*4 (S.D.N.Y. Oct. 20, 2004); Ghose v. Century 21, Inc., 108 F. Supp. 2d 373, 380 (S.D.N.Y. 2000).

3

2002, February 2003, and May 2003 but was denied the promotion each time, allegedly because of his race, national origin and national ancestry. Id. ¶¶ 19, 24.

Fahmy also alleges that white employees at DRI were hired at a higher salary, and received larger salary increases and bonuses than their minority counterparts for carrying out the same work. Id. ¶¶ 36-37. In February or March 2002, Fahmy complained to DRI's District Manager, Tony Picone, that he was paid less than white store managers as a result of DRI's discriminatory pay practices. Id. ¶ 40-41. Picone told him to take his complaint to Lowell Rader, the Director of Store Operations, who reported to Jerry Ray. Id. ¶ 41. In a subsequent meeting, Rader told Fahmy that "he 'should be happy with what [he] got and that's it.'" Id. ¶ 41. In late 2002, Fahmy claims that he had several meetings with Rizzo regarding discrimination in promotion and pay at DRI, and was told to get another job if he was unhappy. Id. ¶ 31. Fahmy alleges that following his complaints, he was subject to retaliation. Specifically, he was denied a promotion to District Manager, was "verbally humiliated" in front of other employees, was assigned to stores with staffing and personnel problems, and had excess cash planted in the safe of his store in order to support a false claim that he was stealing. Id. ¶ 42. Fahmy also alleges that he was denied a bonus payment in September 2003 after filing a formal complaint of discrimination with the EEOC. Id. ¶¶ 50-58.

In spite of the retaliation, Fahmy continued to press his claims for promotion. He received a performance rating of "good" in approximately May 2003, and he lowered the rate of theft from one of DRI's stores. Id. ¶ 20. He asserts that he attended a meeting with Ordemann and Calvano in either March or May 2003 where he asked to be promoted to the position of District Manager, but was told that he was "no where [sic] on the radar screen." Id. ¶¶ 20, 29.

4

Fahmy alleges that he sent emails to Ordemann and Rizzo in late 2003 and 2004 requesting a promotion to District Manager, but did not receive a response. Id. ¶ 29. Following performance reviews in 2003 and 2004, Fahmy states that he again asked Calvano "what the next step was," but did not receive any answer. Id. ¶ 30.

## II. STANDARD FOR MOVING TO AMEND ORIGINAL PLEADING

Rule 15(a) of the Federal Rules of Civil Procedure provides that once a responsive pleading has been served, a party may amend its original pleading "by leave of court . . . and leave shall be freely given when justice so requires." Thus, while the decision to grant leave to amend a pleading is entirely within the discretion of the Court, the Court must have "good reason" to deny leave to amend. See Acito v. IMCERA Group, Inc., 47 F.3d 47, 55 (2d Cir. 1995) (citing S.S. Silberblatt, Inc. v. East Harlem Pilot Block Bldg. Hous. Dev. Fund Co., 608 F.2d 28, 42 (2d Cir. 1979)); accord Lewis v. Phillips, 2004 WL 1944383, at *2 (S.D.N.Y. Aug. 31, 2004). "'[U]ndue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment' will serve to prevent an amendment prior to trial." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87-88 (2d Cir. 2002) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)) (alterations in original); accord Yurman Design Inc. v. Chaindom Enters., Inc., 2001 WL 725291, at *2 (S.D.N.Y. June 27, 2001). Under Rule 15, a delay may still be deemed "undue" even if the delay resulted from a change in attorneys. See Berns v. EMI Pub., Inc., 1999 WL 1029711, at *5 (S.D.N.Y. Nov. 12, 1999); Church of Scientology Int'l v. Time Warner, Inc., 1998 WL 575194, at *2 (S.D.N.Y. Sept. 9, 1998), aff'd, 238 F.3d. 168 (2d Cir. 2001). Nonetheless, "mere delay is not, of itself, sufficient

5

to justify denial of a Rule 15(a) motion." Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000) (citation and internal quotation marks omitted).

Once a scheduling order has been issued setting a deadline for amendments to a pleading, however, Rule 16(b) applies and the Court may deny leave to amend the pleadings unless the moving party can show good cause for failing to file by the deadline. See, e.g., Parker, 204 F.3d at 340 ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."); Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., 2004 WL 2389822, at *1 (S.D.N.Y. Oct. 26, 2004) ("Where . . . a party seeks to amend pleadings after the deadline set by the Court's scheduling order, the . . . 'good cause' standard applies."); Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp., 215 F.R.D. 100, 101 (S.D.N.Y. 2003) ("[W]hen a party moves to amend the pleadings after the deadline to do so in the court's scheduling order has passed, that party must satisfy the good cause requirement of Fed. R. Civ. P. 16(b) . . . before leave to amend may be granted."). Whether there is "good cause" to amend the scheduling order "depends on the diligence of the moving party." Parker, 204 F.3d at 340 (collecting cases). "In other words, the movant must show that the deadlines cannot be reasonably met despite its diligence." Rent-A-Center, Inc., 215 F.R.D. at 104 (citing Robinson v. The Town of Colonie, 1993 WL 191166, at *3 (N.D.N.Y. June 3, 1993)).

Leave to amend may also be denied if the proposed amended complaint fails to state a cause of action. See, e.g., Parker, 204 F.3d at 339; Chowdhury v. Haveli Restaurant, Inc., 2005 WL 1037416, at *2 (S.D.N.Y. May 3, 2005); A.I.A. Holdings, S.A. v. Lehman Bros., Inc., 2001 WL 1631412, at *2-*3 (S.D.N.Y. 2001). "An amendment to a pleading will be futile if a

6

proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Dougherty, 282 F.3d at 88 (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)).

The Supreme Court has held that, in employment discrimination cases, a plaintiff does not need to plead facts to establish a prima facie case of discrimination under McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), to survive a motion to dismiss, but rather only needs to satisfy the notice pleading standard of Rule 8 of the Federal Rules of Civil Procedure. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002). Accordingly, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); accord Swierkiewicz, 534 U.S. at 512.

III. DISCUSSION

    A. Whether the Motion to Amend Is Untimely

A scheduling order was issued in this case on June 30, 2004, setting a deadline of August 6, 2004 for adding new parties or claims. See Pretrial Scheduling Order, filed July 1, 2004 (Docket #9), ¶ 2. DRI argues that because Fahmy has moved to amend the pleadings after this date, his motion should be considered under the stricter standard of Rule 16(b). See DRI Br. at 2-4. DRI made this objection when Fahmy first sought leave to extend the existing scheduling order to permit the filing of the motion to amend. Because Fahmy's new attorney had just entered the case, this Court overruled that objection in the April 8 Order and explicitly extended the previous deadline to allow Fahmy leave to file an amended complaint by April 15, 2005. Accordingly, because Fahmy filed his motion by that deadline, the less restrictive standard of Rule 15 governs the disposition of this motion.

7

B. DRI's Futility Arguments

DRI argues that Fahmy's motion for leave to file an amended complaint should be denied because none of the claims he seeks to add would survive a motion to dismiss. See DRI Br. at 7-14. Because the defendants are correct with respect to some of Fahmy's claims, we will address DRI's futility arguments before addressing other objections to Fahmy's motion for leave to amend.

1. Claims Against Individual Defendants Under 42 U.S.C. § 1981

Fahmy alleges generally that the individual defendants named in the Amended Complaint "did intentionally harass, treat with hostility, and discriminate on the basis of his Race and National Origin/National Ancestry the plaintiff herein." See Am. Compl. ¶ 28. DRI argues that none of the claims against the individual defendants are cognizable because Fahmy has not alleged any personal involvement by the defendants and Fahmy fails to state a claim for race or national origin discrimination. See DRI Br. at 7-12.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. Thus, Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." Patterson v. County of Oneida, 375 F.3d 206, 224 (2d Cir. 2004) (citation omitted). A plaintiff seeking to hold an individual liable under Section 1981 "must demonstrate some affirmative link to causally connect the actor with the discriminatory action." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000) (internal citation and quotation

8

marks omitted). A plaintiff may demonstrate a defendant's personal involvement by showing that the defendant directly participated in the alleged violation, that he or she was grossly negligent in the supervision of subordinates who committed the wrongful acts, or he or she failed to take action after learning of constitutional violations. See Patterson, 375 F.3d at 229 (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)). Mere negligence, however, "does not constitute the 'personal involvement' or 'affirmative link' necessary to support a claim of individual liability." Whidbee, 223 F.3d at 75. Where personal involvement is not satisfactorily pled, the court may dismiss the claim on a motion to dismiss. See Ifill v. United Parcel Serv., 2005 WL 736151, at *5 (S.D.N.Y. Mar. 29, 2005); Lee v. Overseas Shipholding Group, Inc., 2001 WL 849747, at *8 (S.D.N.Y. July 30, 2001); Johnson v. Nat'l Football League, 1999 WL 892938, at *3 (S.D.N.Y. Oct. 18, 1999).

Fahmy has alleged generally that he requested promotions but was not considered or was passed over while white store managers with lesser qualifications were promoted. Id. ¶ 26. With respect to defendant Jerry Ray, the Amended Complaint states that DRI's "selection and promotional process" is "administered solely at the discretion of DRI's Senior Vice President for Store and Pharmacy Operations [that is, Ray] and other officers," Am. Compl. ¶ 21. While these allegations are bare-boned, they are sufficient to allege Ray's personal involvement in the decision not to promote Fahmy in light of the lenient pleading requirements reflected in Fed. R. Civ. P. 8. No claim is stated against Ordemann, Calvano, or Rizzo, however, even under Rule 8's liberal pleading standard. Ordemann is alleged only to have been present at a meeting at which Fahmy was told that he was not "on the radar screen" for a promotion to District Manager, and failed to respond to email from Fahmy about a promotion. Id. ¶ 29. Similarly, Calvano is

9

alleged merely to have attended the same meeting as Ordemann and to have failed to tell Fahmy what the "next step" was after his performance reviews. Id. ¶¶ 29-30. As for Rizzo, Fahmy alleges that after he complained about discriminatory pay, Rizzo failed to respond to his request to be selected for a District Manager position and told him that he could get another job if he was unhappy with his present position. Id. ¶ 31. None of these comments or actions directly connect these individuals to an adverse employment action. Thus, because Fahmy has not alleged these defendants' "involvement in an adverse employment action," Ifill, 2005 WL 736151, at *5, they cannot be added as defendants.

      2.  Retaliation Claims under Title VII and § 1981

The fourth cause of action in the amended complaint alleges retaliation in violation of Title VII and Section 1981. Am. Compl. ¶¶ 39-58.

In his original complaint, Fahmy claimed that DRI retaliated against him in violation of Title VII, but he does not specify whether the amended complaint is intended to add retaliation claims under Title VII and Section 1981 against the individual defendants as well. To the extent this was his intention, any such individual supervisors must be dismissed as they may not be held liable under Title VII. See, e.g., Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003); Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam); Dawson v. County of Westchester, 351 F. Supp. 2d 176, 192 (S.D.N.Y. 2004). With respect to individual liability under Section 1981 for retaliation, Fahmy fails to describe how any of the individuals he seeks to name were personally involved in any of the allegedly retaliatory acts and thus no claim is stated against them either.

Turning to the issue of whether a retaliation claim against DRI under Section 1981 is stated, we note that the Second Circuit has held that a retaliation claim under Section 1981 is cognizable where the retaliation was taken "in response to the claimant's assertion of rights that were protected by § 1981." Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998) (citing cases); see also Hall v. New York Hosp., 2003 WL 22902125, at *3 (S.D.N.Y. Dec. 8, 2003) ("Retaliation claims are cognizable under § 1981 to make that section an available and effective remedy for racially motivated employment discrimination.") (citations omitted). Fahmy claims he was retaliated against for complaining that minorities were not paid as well as non-minority employees and filing an EEOC charge. Am. Compl. ¶¶ 40-58. Because Section 1981 protects workers from discriminatory employment practices, including discrimination with respect to salary and compensation, see Reyes v. Bronx-Lebanon Hosp. Center, 2000 WL 377511, at *2 (S.D.N.Y. Apr. 13, 2000), it has also been held to protect workers from being retaliated against for complaining about these practices. See, e.g., Choudhury v. Polytechnic Institute of New York, 735 F.2d 38, 39-40, 43 (2d Cir. 1984); Jong-Fwu v. Overseas Shipholding Group, Inc., 2002 WL 1929490, at *6-*7 (S.D.N.Y. Aug. 21, 2002); Swihart v. Pactiv Corp., 187 F. Supp.2d 18, 23-24 & n.6 (D. Conn. 2002). Thus, it would not be futile for Fahmy to amend his complaint to make this claim against DRI.

### 3. Intentional Infliction of Emotional Distress Claim

DRI argues the intentional infliction of emotional distress claim is time-barred inasmuch as the statute of limitations for this tort in New York is one year. DRI Br. at 14. Fahmy counters that his claim is not time barred because the wrong was of a continuous nature and the accrual period of the claim does not begin until the conduct terminates. Pl. Reply at 9. We need not

decide whether Fahmy would be entitled to make a continuous violation argument or whether any single independently actionable claim took place within the statutory time period because the Court accepts DRI's alternative argument that none of Fahmy's allegations meet the threshold requirements of an intentional infliction of emotional distress claim. See DRI June 13 Letter at 3-4.

New York law requires plaintiffs to prove the following four elements to make an intentional infliction of emotional distress claim: "'(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.'" Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (quoting Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999)). This standard is "rigorous, and difficult to satisfy." Howell v. New York Post Co., 81 N.Y.2d 115, 122 (1993) (citation omitted). Moreover, it is recognized that "New York courts are exceedingly wary of claims for intentional infliction of emotional distress in the employment context because of their reluctance to allow plaintiffs to avoid the consequences of the employment-at-will doctrine by bringing a wrongful discharge claim under a different name." Mariani v. Consol. Edison Co., 982 F. Supp. 267, 275 (S.D.N.Y. 1997) (collecting cases), aff'd, 172 F.3d 38 (2d Cir. 1998). To state a valid claim, a plaintiff must show that a defendant's conduct was "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Stuto, 164 F.3d at 827 (quoting Howell, 81 N.Y.2d at 122). "Thus, satisfying the first element of this claim is difficult, even at the pleadings stage." Ifill, 2005 WL 736151, at *6 (citation omitted).

Fahmy asserts that the DRI and the individual defendants "did intentionally and unreasonably subject the Plaintiff to great emotional distress" which he claims caused him "mental stress and trauma including depression; anxiety; and loss of sleep." Am. Compl. ¶ 67. Fahmy rests his claim on his allegations of DRI's discriminatory policies on promotions and compensation, as well as the retaliation that he suffered after speaking out about these issues.

As discussed above, Fahmy's specific allegations include DRI's failure to establish, distribute or apply objective criteria for the District Manager position and failure to provide information about available openings. Id. ¶ 22. Fahmy notes that he was denied promotions on the occasions when he applied for a District Manager position. Id. ¶ 19. Even after successfully lowering the pilferage rate at a "problem" store, he was told that he "was nowhere on the radar screen" for a District Manager position and, in general, his requests to be considered for a promotion were ignored. Id. ¶¶ 20, 29-30. Fahmy also alleges that non-white workers were paid lower salaries, denied bonuses, and received lower salary increases than white workers, id. ¶ 37, and when he complained about the unequal pay and not being promoted, he was told that "he could get another job," id. ¶ 31.

In retaliation for his complaints about DRI policies, Fahmy alleges that he was denied a promotion to District Manager, was "verbally humiliated" by his District Manager in front of other employees, had excess cash was planted in his store safe in an effort to claim that he was stealing money from DRI, was written up in purported customer complaints, and was assigned to inadequately staffed stores with poorly trained employees, inadequate supplies, and high theft losses. Id. ¶ 42. He was also denied a bonus payment that he was entitled to. Id. ¶¶ 50-58. Fahmy argues that, through these actions, DRI attempted to create a paper trail to justify his

13

discharge. Id. ¶ 44. Fahmy contends that DRI did not correct any of the known wrongs occurring in the store and concealed its wrongful practices by providing false information to the EEOC. Id. ¶¶ 59-65.

The conduct alleged by Fahmy, while obviously improper if true, was not so outrageous that it "'go[es] beyond all possible bounds of decency.'" Kearney v. County of Rockland, 2005 WL 1420895, at *12 (S.D.N.Y. June 15, 2005) (quoting Fischer v. Maloney, 43 N.Y.2d 553, 558 (1978)). Adverse employment actions are simply not a sufficient basis for an intentional infliction of emotional distress claim, even when coupled by verbal harassment. See, e.g., Kearney, 2005 WL 1420895, at *1-*2, *12 (failure to promote, yelling at employee in front of coworkers, denial of time off, involuntary transfer); Daniels v. Health Ins. Plan of Greater New York, 2005 WL 1138492, at *3 (S.D.N.Y. May 12, 2005) (discriminatory termination and failure to promote, rudeness to employee, failure to accommodate employee's disability, and harassment); Rivera v. Baccarat, Inc., 1996 WL 251850, *3 (S.D.N.Y. May 10, 1996) (prohibiting use of Spanish in the workplace and subjecting employee to stereotyping and ridicule); Leibowitz v. Bank Leumi Trust Co., 152 A.D.2d 169, 181-83 (2d Dep't 1989) (wrongful discharge and use of ethnic slurs); see generally Silberstein v. Advance Magazine Publishers, Inc., 988 F. Supp. 391 (S.D.N.Y. 1997) (discussing inapplicability of the tort of intentional infliction of emotional distress to employment situations).

While false accusations of criminal conduct can meet the extreme and outrageous standard in some situations, no such allegations are present here. Compare Mohamed v. Marriott Int'l Inc., 905 F. Supp. 141, 147, 157-58 (S.D.N.Y. 1995) (accusing plaintiff of stealing to pay for debt on credit card not so outrageous as to exceed the bounds of decency and there was no

14

evidence of intent to falsely accuse); Kovich v. Manhattan Life Ins. Co., 640 F. Supp. 134, 136-37 (S.D.N.Y. 1986) (threats to "blackball" plaintiff from insurance industry if she filed a complaint against her employer and forging time records to indicate that plaintiff was habitually late was not extreme and outrageous under New York law); with Kaminski v. United Parcel Serv., 120 A.D.2d 409, 410-12 (1st Dept. 1986) (intentional infliction of emotional distress claim adequately supported by allegations that plaintiff was wrongfully accused of stealing money, held in an office against his will, threatened with criminal prosecution if he did not confess, return the money, resign his position, and waive his rights to health and pension benefits, and plaintiff actually forced to sign confession and resignation papers and waive his benefits). In the instant case, Fahmy only alleges that cash was planted in his store safe as an attempt to discredit him, and that customer complaints about him were fabricated. Am. Compl. ¶ 42. He does not say that he was ever actually accused of a crime nor does he describe any adverse consequences arising from false accusations or complaints.

None of the cases Fahmy cites offers any support for his intentional infliction of emotional distress claim. See Fahmy June 27 Letter at 2-3. To the extent that the cases Fahmy cites to arise in the employment context, they tend to support the principle that "[i]n the rare instances where the New York courts have found the complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the claims have been accompanied by allegations of sex discrimination, and more significantly, battery." Gerzog v. London Fog Corp., 907 F. Supp. 590, 604 (E.D.N.Y. 1995) (citing cases). See O'Reilly v. Executone of Albany, Inc., 121 A.D.2d 772, 773-74 (3d Dep't 1986) (allegations that defendant and plaintiff's male coworkers subjected plaintiff to sexual jokes and comments, sexual contact

15

and gestures, and pornographic pictures); Collins v. Willcox, Inc., 600 N.Y.S.2d 884, 885-86 (Sup. Ct. 1992) (pattern of sexual harassment in which the defendant's behavior "continually put [plaintiff] in embarrassing, humiliating and demeaning positions"); cf. Brink's Inc. v. City of New York, 533 F. Supp. 1123, 1125 (S.D.N.Y. 1982) (demotion, harassment, and verbal abuse did not rise to intentional infliction of emotional distress); Belanoff v. Grayson, 98 A.D.2d 353, 354-55, 357-58 (1st Dep't 1984) (allegations that defendant gave plaintiff negative work evaluations, advised her to transfer, denied her grievance complaints, and ultimately terminated her after she informed her employer that she was getting married was insufficient to state a claim).

Fahmy cites cases involving conduct far more outrageous than what is alleged here, and thus do not support his position. See Neufeld v. Neufeld, 910 F. Supp. 977, 980-81, 984-85 (S.D.N.Y. 1996) (continuous course of harassment designed to cause plaintiffs to suffer emotional distress and have nervous breakdowns included confining one plaintiff to a psychiatric facility, filing false complaints about another plaintiff with government agencies, and threatening live-in health aide of one plaintiff); Sanchez v. Orozco, 178 A.D.2d 391, 391-92, 394 (1st Dep't 1991) (defendant psychiatrist convinced his patient to have sexual relationship with him and made harassing telephone calls to plaintiff after she ended the relationship); Atherton v. 21 East 92nd Street Corp., 149 A.D.2d 354, 354-56 (1st Dep't 1989) (bursting of frozen water pipes led to flooding and collapse of ceilings and walls, and malfunction in heating system caused a layer of oily soot and lethal levels of carbon monoxide to be released, causing plaintiff to fear for her health and safety); Levine v. Gurney, 149 A.D.2d 473, 475 (2d Dep't 1989) (filing false police

16

report against plaintiff, where defendant was named in a matrimonial action between plaintiff and plaintiff's husband).[1]

C. DRI's Undue Delay and Prejudice Arguments

Thus, of the additional claims contained in the proposed amended complaint, only Fahmy's retaliation claim against DRI and section 1981 claim against Ray would be sufficient to survive a motion to dismiss. The next question is whether the amendment should be disallowed based on delay or prejudice to the defendants. For the reasons discussed above, the Rule 15 standard governs this motion to amend. DRI argues that if the motion to amend is granted, additional discovery will likely be needed and the delay in the proceedings will cause them significant prejudice. DRI Br. at 14-15.

At this point, there is no reason to believe that these amendments will cause any delay in the resolution of this case. With respect to the retaliation claim, the original complaint already

---

[1] Fahmy cites three additional cases: Flatley v. Hartmann, 138 A.D.2d 345 (2d Dep't 1988); Halio v. Lurie, 15 A.D.2d 62 (2d Dep't 1961); and Flamm v. Van Nierop, 291 N.Y.S.2d 189 (Sup. Ct. 1968), which have been cited by the Second Circuit in dictum for the proposition that lower New York courts have found conduct that is "somewhat less than 'utterly intolerable in a civilized society'" actionable. See Bender v. City of New York, 78 F.3d 787, 791 (2d Cir. 1996). Courts since Bender have consistently raised doubts as to the validity of the holdings in these cases, noting in particular that two of them pre-date a large number of cases in New York that have rejected intentional infliction of emotional distress claims. See Silberstein, 988 F. Supp. at 393-94; Rivera, 1996 WL 251850, at *4. In any event, these cases on their facts reflect conduct designed to inflict far greater distress than the conduct alleged by Fahmy. See Flatley, 138 A.D.2d at 346 (defendant made repeated hang-up calls to plaintiffs even after conviction for harassment for same behavior in local criminal court); Halio, 15 A.D.2d at 63-64 (while dating plaintiff, defendant married another woman secretly and hid the marriage until the plaintiff discovered it, at which time the defendant subsequently taunted her saying that she would be the "object of derision and the subject of amusement" for years to come); Flamm, 291 N.Y.S.2d at 189 (defendant "dashed" at the plaintiff in public making "threatening gestures, grimaces, leers, distorted faces and malign looks," followed defendant in his car at close distance, walked closely behind or in front of plaintiff in public, and made frequent phone calls to plaintiff at home and at work).

contained a charge of retaliation under Title VII. Thus, there is no reason that additional discovery relating to the section 1981 claim will be needed. Similarly, the addition of Ray as a defendant will not cause any delay because the amendment does not expand on any facts in the complaint that would justify a renewal of discovery. The addition of Ray will not cause the Court to revise its prior ruling denying the motion seeking to compel Ray's testimony. As reflected in the decision on that motion delivered at the June 24, 2005 oral argument, plaintiff has provided no evidence that Ray has any information regarding the plaintiff's treatment.[2]

Conclusion

Fahmy's motion for leave to amend (Docket # 30) is granted insofar as he adds a claim for retaliation against DRI based on 42 U.S.C. § 1981 and a claim against Ray for discrimination. Fahmy shall arrange for prompt service of an appropriate amended complaint on defendant Ray – though he should first consult with DRI's counsel to determine if they can accept service. The due date for any dispositive motions is extended to October 28, 2005. Any such motions shall be made returnable before Judge Cote. If no party files such a motion, the pre-trial Order shall be due on November 10, 2005.[3]

---

[2] While the June 24 ruling denying the Ray deposition at first blush might seem inconsistent with the instant ruling that plaintiff has adequately alleged Ray's personal involvement, in fact there is no inconsistency. The standard for judging Ray's personal involvement for purposes of the proposed amendment to the complaint is based on the unsworn allegations of the complaint. By contrast, the motion to compel was decided based on materials dehors the complaint, including materials submitted by the defendants regarding Ray's knowledge of the incident.

[3] By letter dated July 26, 2005, Fahmy seeks to offer an expert witness regarding his psychiatric condition. Following the appearance of Fahmy's new counsel, the Court in its Order of April 7, 2005 extended the deadline for the submission of expert reports under Fed. R. Civ. P. 26(a)(2)(A) to May 27, 2005. Notably, Fahmy waited until the very end of the discovery period to notice fact depositions. He submitted no expert report by the due date. The July 26 letter

SO ORDERED.

Dated: New York, New York
September 26, 2005

                                                                                _____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies to:

Andrew J. Schatkin
350 Jericho Turnpike
Jericho, NY 11753

Stephen A. Fuchs
Grotta, Glassman & Hoffman
650 Fifth Avenue
New York, NY 10019

---

provides no good cause for the extension of the Court-ordered deadline.

SO ORDERED.

Dated: New York, New York
September 26, 2005

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies to:

Andrew J. Schatkin
350 Jericho Turnpike
Jericho, NY 11753

Stephen A. Fuchs
Grotta, Glassman & Hoffman
650 Fifth Avenue
New York, NY 10019

---

provides no good cause for the extension of the Court-ordered deadline.