UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
EMAD FAHMY,                             :
                                        :      04 CIV. 1798 (DLC)
               Plaintiff,               :
                                        :      OPINION AND ORDER
          -v-                           :
                                        :
DUANE READE, INC., DUANE READE          :
INTERNATIONAL, INC., and JERRY RAY,     :
                                        :
               Defendants.              :
                                        :
----------------------------------------X

Appearances:

For Plaintiff
Andrew J. Schatkin
Law Offices of Andrew J. Schatkin
350 Jericho Turnpike
Jericho, NY 11753

For Defendants:
Craig Benson
Stephen A. Fuchs
650 Fifth Avenue
New York, NY 10019


DENISE COTE, District Judge:

     Plaintiff Emad Fahmy ("Fahmy"), who describes himself as an

"African-American male of Egyptian ancestry," brings this Title

VII employment discrimination action against his employer, Duane

Reade, Inc. ("Duane Reade").  Fahmy, a store manager for the

pharmacy chain, claims that he was repeatedly passed over for

promotion to the position of district manager because of his race

and national origin.  He also asserts that he was paid less than

his Caucasian counterparts, and that when he raised these issues,

Duane Reade retaliated against him.  Defendants have moved for

summary judgment.  For the following reasons, the motion is

granted in part and denied in part.

Background

The following facts are undisputed or taken in the light
most favorable to plaintiff, except where noted.  Fahmy was born
and raised in Egypt and is a naturalized American citizen.  He
holds a B.A. in business and political science from Alexandria
University in Egypt and studied accounting for a year at Hofstra
University.  Fahmy has been employed by defendant Duane Reade,
which owns and operates drug and convenience stores in the New
York City area, on two separate occasions.  He was first hired by
Duane Reade in November 1998 as a manager in training, earning
approximately $37,000 annually.  He left the company voluntarily
in July 1999 to work in the airline industry, where his annual
earnings, including overtime, were approximately $42,000.  In
July 2001, Fahmy sought to be rehired by Duane Reade as a manager
or assistant manager.  He requested an annual salary of $42,000.
Duane Reade hired him as a manager in training with a salary of
$39,900.

In August 2001, Fahmy claims he spoke with Seymour Stein,
Duane Reade's director of human resources, and told him that he
believed he was paid less than "other manager[s]" because of his
race.[1]  In October 2001, Fahmy was promoted to store manager of

---

[1] Indeed, at his deposition, Fahmy stated that he used the
words "race," "national origin," and "discrimination" in his
conversation with Stein:
A. And I told him this is -- you know, I -- I -- "I believe this
is based on, you know, discrimination, and, you know, and for

Store #135, and his salary was increased to $43,000.  Fahmy complained to his supervisor, district manager Tony Picone, that the raise was not substantial enough.  Picone responded that once Fahmy had proven his capabilities on the job, he would receive another raise.

In or around October 2001, Fahmy met several times with James Rizzo, Duane Reade's vice president of human resources. Fahmy claims that at one such meeting, he informed Rizzo that he was experiencing discrimination.  According to Fahmy's wife, who also worked at Duane Reade and was present at the meeting, "Rizzo told him that the company knew that there were issues with discrimination but assured him that it would eventually change." Rizzo also allegedly said that if Fahmy was unwilling to "wait" for these changes to happen, he could "find another job."

In January 2002, Fahmy was transferred to Store #152 and given a $3,000 raise.  Store #152, located in the Chrysler Building in Manhattan, sold a higher volume of goods than Store

_____

race and national origin."
Q. Did you use the words race and national origin to Seymour on that day?
A. Yes, I did.  And I told Jim Rizzo, too.
Q. Let's just stick to the discussion with Seymour.  You specifically said to Seymour that you were being discriminated against based upon your race and national origin?
A. Yes.
Q. You actually used the words national origin?
A. Yes.
Q. And you used the word race?
A. Yes.
Q. And you used the word discrimination?
A. Yes.
Q. This was around August 2001?
A. Around this time.

#135, and Fahmy contends that it was a difficult assignment, due to a dispute with the building's management and "severe shoplifting issues." Fahmy again complained to Picone about his salary, noting that he knew of other managers in the company that ran lower-volume stores but earned higher salaries. Picone referred him to Lowell Rader, director of store operations for Duane Reade, who met with Fahmy in early 2002.[2] Fahmy claims that he communicated his observation that minority managers were paid less than Caucasians, and that Rader told him that he should be "happy" with "what [he] got."

Shortly after starting at Store #152, Fahmy wrote to Rizzo regarding "several issues of mistreatment" by district managers. Later in the month, he again wrote to Rizzo, claiming that Picone had issued a write-up against him after the store safe was found to be $75 short. Fahmy described the write-up as retaliatory, claiming that the rule Rizzo accused him of violating did not exist. He did not raise the issue of discrimination based on race or national origin in either letter.

In June 2002, Fahmy again complained to Picone about his salary, noting that Store #152 had recently been given a very favorable review by management, and that he was still being paid less than other managers. In late June 2002, Fahmy received another raise, bringing his annual salary to $49,000.

---

[2] In his complaint, plaintiff states that the meeting was held in "February or March 2002." Because the meeting is referred to in a letter written by Fahmy on January 13, 2002, however, it appears that the meeting actually took place earlier that month.

4

In June and July of 2002, Duane Reade received a number of letters from customers complaining about interactions with Fahmy. On July 25, Picone issued a written warning to Fahmy regarding the complaints. Fahmy responded that he thought the write-up amounted to retaliation for the complaints he had filed with upper management.

In August 2002, Fahmy took family leave to care for his mother in Egypt. When he returned from his leave in October 2002, Fahmy was reassigned to Store #156, which he describes as a difficult location that had a high level of shoplifting, many customer complaints, and a difficult physical layout. According to Fahmy, the store was sued under the Americans with Disabilities Act for failure to provide sufficient access to the handicapped, and previous managers of Store #156 had been fired or forced to leave the company. Fahmy claims that there were two other, less difficult locations to which he could have been assigned upon his return from Egypt. Duane Reade claims that it was standard for managers to be transferred to multiple stores during their first year, and that the company was not attempting to disadvantage Fahmy by moving him to these locations.

Fahmy states that throughout 2002 and 2003, he repeatedly expressed interest in advancing to the position of district manager, but he never received such a promotion. (Each of Duane Reade's approximately 12-15 district managers typically oversee the operation of approximately 20 stores and are paid significantly more than store managers.) Fahmy fails, however,

to state if, when, or how he applied for specific positions.[3]
Duane Reade claims that the relevant vacancies were filled in
October 2002, February 2003, and March 2003. In 2002 and 2003,
virtually all of the district managers were Caucasian.[4]

In the spring of 2003, Fahmy requested a meeting with
Gregory Calvano, his district manager at the time, and Tom
Ordemann, the vice president of store operations, to discuss his
performance and possible promotion. Fahmy believed he was
eligible for advancement because his overall score on a
performance evaluation put him in the second-highest of five
categories.[5] At the meeting, Ordemann told Fahmy that he wasn't
"even on [the] radar screen for district manager" because of

---

[3] The submissions made by Fahmy's attorney, Andrew J.
Schatkin, are rife with such factual omissions and are, at times,
so disorganized as to be nearly incomprehensible. Moreover,
throughout his brief, Schatkin repeatedly substitutes overheated
rhetoric ("If this is not a case of disparate impact
discrimination, than [sic] there is no disparate impact
discrimination") for legal analysis. This tendency sometimes
leads him to state things that he doesn't mean; for example, in
his response to defendants' Rule 56.1 statement, Schatkin
repeatedly claims that his client "disputes [a] paragraph in its
entirety," when, in fact, Fahmy only argues with portions of it.
Furthermore, his frequent failure to point to the facts in the
record that might support his client's contentions unnecessarily
complicated the Court's job.

[4] Duane Reade states that it employed "several" minority
district managers between 1997 and 2003. The company has
produced evidence of at least three such district managers, none
of whom still serve in the position.

[5] Fahmy's score was 73 out of a possible 108. A store
manager who scores between 55 and 90 is described on Duane
Reade's standardized Store Manager Assessment form as
"exceed[ing] standards and hav[ing] exceptional strengths in
multiple areas. Further development needed on areas. Increased
responsibilities and/or possible promotion to be outlined."

repeated problems with customer service and his inability to take instruction from supervisors. In July 2003, Fahmy filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

In September 2003, Fahmy wrote Calvano an e-mail indicating that he believed he was entitled to a "shrink bonus" for the 2002 fiscal year. Duane Reade states that it provides such bonuses to managers whose stores lose less than a targeted percentage of inventory. The targets vary by store, and a store must meet its target in at least two inventory cycles to qualify for the bonus. Calvano forwarded Fahmy's e-mail to Mike Knievel, Duane Reade's vice president of asset protection, who initially stated that Fahmy was ineligible for the bonus because he was an assistant manager. When Knievel was informed the Fahmy had been a store manager during the relevant period, he then stated that Fahmy was ineligible because one of the stores he managed during the period (#152) did not meet its target, and he only served as manager of the other (#135) for part of a cycle. Fahmy claims that he was denied the bonus because of his race and identifies five managers who he claims received such bonuses despite not being eligible.[6]

Fahmy commenced this action on March 5, 2004. He filed an amended complaint on October 4, 2005, alleging that Duane Reade[7]

_____

[6] In making this charge, Fahmy refers the Court generally to a description of the shrink bonus program, but he does not explain precisely how he believes it was misapplied.

[7] Duane Reade International, Inc. is also named as a defendant in this action. Defendants have averred that Duane Reade, Inc. was plaintiff's employer at all relevant times.

violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §
2000e, et seq. ("Title VII") by: (1) selecting district managers
through the use of policies that have a disparate negative impact
on non-Caucasian[8] applicants' chances of being promoted; (2)
paying plaintiff and other non-Caucasian employees lower salaries
than their white counterparts and denying them bonuses that white
employees receive; and (3) retaliating against plaintiff for
complaining about Duane Reade's discriminatory practices.  He
also seeks to hold Jerry Ray, Duane Reade's senior vice president
of pharmacy and store operations, liable for the company's
actions under 42 U.S.C. § 1981.  Defendants move for summary
judgment.  For the following reasons, defendants' motion is
granted in part and denied in part.

Discussion

    Summary judgment may not be granted unless all of the
submissions taken together "show that there is no genuine issue
as to any material fact and that the moving party is entitled to
a judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  The
same standard is applied in employment discrimination cases as in
all others.  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456,

---

Because there is no evidence in the record connecting Duane Reade
International, Inc. to the events at issue, summary judgment
shall be granted in its favor as to all claims.

    [8] Although neither the complaint nor plaintiff's brief is
clear on this point, it appears that Fahmy is claiming that Duane
Reade's policies in effect discriminate against all non-white
employees, rather than just those of African or Egyptian descent.

465 (2d Cir. 2000)(citing Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133 (2000)). The moving party bears the burden of demonstrating the absence of a material fact question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings. Rule 56(e), Fed. R. Civ. P.; accord Burt Rigid Box, Inc. v. Travelers Property Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

I. Failure to Promote

In his amended complaint, Fahmy argues that his race and national origin prevented him from being promoted to district manager. He attempts to articulate this as a "disparate impact" claim, alleging that Duane Reade had facially neutral promotion policies that disadvantaged minorities. In his opposition papers to the instant motion, he essentially shifts his argument to one of "disparate treatment," alleging that Duane Reade intentionally discriminated against him because of his race and/or national origin in making promotion decisions. Although plaintiff pled his claim as one of disparate impact, his allegations also clearly sound in disparate treatment and effectively put

9

defendants on notice of the need to defend against such a charge.
Therefore, plaintiff's disparate treatment argument is not
waived, and his failure-to-promote claim will be analyzed as both
a disparate impact and a disparate treatment claim.

A. Disparate Impact

Under Title VII, employers are prohibited from engaging in
both "overt and intentional" discrimination, as well as in
actions that "are facially neutral, but which have a disparate
impact because they fall more harshly on a protected group than
on other groups and cannot otherwise be justified." Malave v.
Potter, 320 F.3d 321, 325 (2d Cir. 2003) (citation omitted). In
order to state a prima facie case of disparate impact, a
plaintiff must "(1) identify a policy or practice, (2)
demonstrate that a disparity exists, and (3) establish a causal
relationship between the two." Id. (citation omitted).

Plaintiff fails to do all three. In the amended complaint,
Fahmy states that the policies that negatively impact minorities'
ability to be promoted to district manager include Duane Reade's
failure to provide and disseminate a job description for the
position; the company's refusal to establish and apply objective
criteria for promotions; and the lack of information flowing to
store managers about vacancies and promotion opportunities. In
his papers opposing defendants' motion for summary judgment,
however, Fahmy makes almost no mention of these policies.
Instead, as already noted, he switches gears, arguing that "Duane

10

Reade had a policy of barring and excluding minorities." To the extent such a policy exists, it is not the sort of "facially neutral" practice that is amenable to disparate-impact analysis.

Plaintiff does present some evidence of a disparity, however. Fahmy states that Caucasians are overrepresented among Duane Reade's district managers, particularly when compared to their representation among store managers. He points to a document purportedly obtained from the EEOC in the fall of 2003 indicating that of Duane Reade's approximately 240 store managers, roughly 80% were non-white minorities. He also highlights two lists of Duane Reade's district managers from November 2002 and September 2003. Of the 13 district managers on the 2002 list, only one is a minority. On the 2003 list, all 12 district managers are white.

Defendants argue that these statistics do not establish that minorities are disadvantaged because they do not compare the "racial composition of the at-issue jobs [with] the racial composition of the qualified population in the relevant labor market." Wards Cove Packing Co. Inc., v. Atonio, 490 U.S. 642, 650 (1989)(citation omitted). Plaintiff correctly points out that such a comparison is not an absolute requirement, especially where "labor market statistics will be difficult if not impossible to ascertain," id. at 651, and notes that in Malave, the Second Circuit held that a district court could not reject an employee's statistical evidence simply because it did not focus on the applicant pool or eligible labor pool. Malave, 320 F.3d

at 326.  But, unlike the plaintiff in <u>Malave</u>, Fahmy has not
introduced a statistical study suggesting that the racial
discrepancies between lower-level and upper-level positions can
only be explained by discrimination.  Likewise, he has not
claimed that the relevant market statistics are difficult to
obtain, nor has he shown how the group of store managers is the
best available proxy for the population from which district
managers are drawn.[9]  <u>See</u> <u>id.</u> at 327 n.4,

Moreover, Fahmy makes no attempt to explain the causal
connection between the policies he identifies in his complaint
and what he alleges is a disproportionately white group of
district managers.  Instead, he does precisely what previous
disparate-impact opinions have barred, and "rel[ies] on the
bottom line numbers in an employer's workforce" instead of
"identif[ying] a specific employment practice" and "show[ing]
that the practice in question has caused the exclusion" of
minorities.  <u>Id.</u> at 326 (citation omitted); <u>see also</u> <u>Brown v.</u>
<u>Coach Stores Inc.</u>, 163 F.3d 706, 712 (2d Cir. 1998) (disallowing
the disparate-impact claim of a plaintiff who did not establish a
causal connection between an identified policy and the proportion
of minority employees, noting that "underrepresentation of [a
minority group] might result from any number of factors").  In

---

[9] Indeed, in his opposition to defendants' motion, Fahmy
notes that Rizzo "admitted [at his deposition] that only one of
the District Managers had been a Store Manager."  This would
suggest, then, that the racial composition of Duane Reade's store
managers is not particularly relevant to the racial composition
of its district management team.

short, plaintiff does not provide evidence that would allow a finder of fact to make the "inference of causation" required for a prima facie showing of disparate impact.  Equal Employment Opportunity Comm'n v. Joint Apprenticeship Comm., 186 F.3d 110, 117 (2d Cir. 1999).

## B.  Disparate Treatment

Plaintiff all but abandons his disparate impact argument in his opposition to the instant motion, admitting that the failure-to-promote claim "is more keenly and actually analyzed as a disparate treatment claim."  Claims of disparate treatment under Title VII are analyzed with the burden-shifting approach set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  The plaintiff bears the initial burden of establishing a prima facie case of discrimination.  Williams v. R. H. Donnelly Corp., 368 F.3d 123, 126 (2d Cir. 2004).  To satisfy this burden, a plaintiff alleging discrimination must establish that

> (1) he is a member of a protected class; (2) he is
> competent to perform the job or is performing his
> duties satisfactorily; (3) he suffered an adverse
> employment decision or action; and (4) the decision or
> action occurred under circumstances giving rise to an
> inference of discrimination based on his membership in
> the protected class.

Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005) (citation omitted).  A plaintiff's burden in presenting prima facie evidence of discriminatory treatment is de minimis.  Abdu-Brisson, 239 F.3d at 467.

There is no dispute that Fahmy meets the first three

criteria: he is a member of a protected class; he has performed his job satisfactorily; and, as the Second Circuit has long held, "adverse employment actions include refusals to promote." Deters v. Lafuente, 368 F.3d 185, 190 (2d Cir. 2004) (citation omitted). The issue here is whether Duane Reade's repeated decisions not to promote Fahmy to district manager were made under circumstances that give rise to an inference of discrimination. Fahmy alleges that during the time he expressed interest in a district manager position, Duane Reade hired six Caucasian district managers, three of whom were recruited from outside the company, and three of whom were promoted from within. Fahmy had received good performance reviews and had prior management experience, but was not seriously considered for any of the positions. Given the light burden he bears at this stage of the analysis, Fahmy has established a prima facie case of disparate treatment.

The establishment of a prima facie case "creates a presumption that the employer unlawfully discriminated, and thus places the burden of production on the employer to proffer a nondiscriminatory reason for its action." James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000)(citation omitted); see also Mandell v. County of Suffolk, 316 F.3d 368, 380 (2d Cir. 2003). Duane Reade provides such a reason, pointing to what it describes as a high number of customer complaints directed at Fahmy.

As a result of defendant's nondiscriminatory explanation of the promotion decision, the presumption of unlawful

14

discrimination "drops out of the picture." James, 233 F.3d at 154 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993)). "[T]he employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." James, 233 F.3d at 154. The burden, then, is on Fahmy to produce admissible evidence that his race or national origin was "at least one of the 'motivating' factors" in Duane Reade's passing him over for promotion. Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 123 (2d Cir. 2004). In making this showing, Fahmy "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [his] version of the events is not wholly fanciful." Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005)(citation omitted).

In his motion papers, Fahmy does not indicate what, if any, basis he has for believing that Duane Reade's stated reason for promoting other candidates over Fahmy was false. In his affidavit, however, he appears to call into question some of the customer complaints cited by the company. Fahmy does not contest that Duane Reade received the complaints on which it claims it based its decision not to promote him. Nor does he claim, much less demonstrate, that the Caucasians who received promotions were the subject of as many or more complaints.[10] Rather, he

---

[10] As noted above, Fahmy's wife, Suzanne Fahmy, also worked at Duane Reade as a store manager and in the human resources department. In her affidavit, she claims that Duane Reade "received many complaints from the majority of their store locations[,] and managers were not disciplined and scrutinized."

argues with the customers' interpretation of events, and asserts that Duane Reade should have taken his side in these disputes. He also points to favorable evaluations he received for other areas of his performance as a store manager.

It is well established that "it is not the function of a fact-finder to second-guess business decisions." Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988). Determining how to evaluate a candidate's customer service record and how to weigh various factors in making a promotion decision is precisely the sort of decision in which courts do not intervene without evidence that the employer's claimed reason was "so lacking in merit as to call into question its genuineness." Id. Therefore, standing alone, Fahmy's belief that Duane Reade should not have weighed customer complaints as heavily as it did is insufficient to demonstrate that the company's stated reasons for its promotion decisions were pretextual.

In attempting to show that a rational fact-finder could make the inference that Duane Reade's failure to promote him was the product of discrimination, Fahmy relies primarily on the statistical evidence discussed above. There is no doubt that "disparate treatment plaintiffs may introduce statistical evidence as circumstantial evidence of discrimination." Hollander v. American Cyanamid Co., 172 F.3d 192, 202 (2d Cir.

_____

This allegation is not mentioned in Fahmy's brief, his Rule 56.1 statement, or his affidavit. In any event, standing alone, this assertion is too general to provide the basis for a fact-finder to determine that Duane Reade's stated rationale for its promotion decision was pretextual.

1999).  This does not, however, mean that any numeric data will be admissible.  The Second Circuit has repeatedly held that statistical evidence purporting to show the effects of discrimination is not probative of an employer's intent where no effort is made to account for other possible causes of the disparity.  See, e.g., Bickerstaff v. Vassar College, 196 F.3d 435, 450 (2d Cir. 1999); Hollander, 172 F.3d at 203.  Moreover, when the sample size is small, courts look very skeptically at statistical proffers by plaintiffs.  Pollis v. The New School for Social Research, 132 F.3d 115, 121-22 (2d Cir. 1997) (collecting decisions in which "courts have ruled, as a matter of law, that discrimination may not be proved by statistics involving [a] small . . . pool," such as 10 to 15).  And when there is a risk that the data is "gerrymandered" to support plaintiff's case, the Second Circuit has held that reliance on such figures is "clear error."  Fisher v. Vassar College, 70 F.3d 1420, 1443 (2d Cir. 1995).

Here, Fahmy's data suffers from all these deficiencies.  He has hand-picked two lists of district managers, separated in time by less than a year, to support his contention that minorities are rarely promoted to that position.  The lists include a total of only 16 individuals.  And, as noted above, Fahmy has made no effort to control for any factors, such as education, previous experience, or performance evaluations, that might explain part or all of the observed disparity.

Although the data submitted by Fahmy is not probative, he

17

has submitted evidence of two conversations with Duane Reade executives that create an issue of material fact with respect to Duane Reade's intentions in making its promotion decisions. In an affidavit, Fahmy's wife describes an October 2001 meeting between Fahmy and Rizzo, at which Rizzo allegedly admitted that the company had "issues with discrimination" and told Fahmy that he could "find another job" if he was unwilling to wait for changes to occur. Fahmy also claims that when he confronted Lowell Rader, Duane Reade's director of store operations, with his observation that minority managers were paid less than Caucasians, Rader responded that Fahmy should be "happy" with "what [he] got." Although defendants contest Fahmy's description of these conversations and point to evidence supporting their position that race discrimination was not raised at these meetings, issues of credibility are not appropriately resolved at the summary judgment phase. <u>Anderson</u>, 477 U.S. at 255. If a fact finder were to credit Fahmy's version of events, it could determine that Duane Reade discriminated on the basis of race or national origin when it filled the district manager positions.

Even if a fact finder concluded that these conversations occurred as the plaintiff recounts then, other interpretations of the conversations are, of course, possible. Even according to Fahmy, Rizzo never admitted that Duane Reade's "issues" were with <u>racial</u> discrimination. Further, Rizzo's assurance that things would "eventually change" could be taken to mean that Duane Reade was actively working to increase diversity in its upper ranks.

And Rader's statement that Fahmy should be "happy" with his salary could be interpreted to mean that he simply believed Fahmy was fairly compensated. Here, however, because the Court must take these facts in the light most favorable to the plaintiff, id. at 247, defendants' motion for summary judgment is denied as to Fahmy's disparate treatment claim.[11]

II. Disparate Pay

To state a claim for disparate pay under Title VII, a plaintiff must show that (1) he belongs to a protected class, (2) he was paid less than non-members of the class for substantially the same work, and (3) the employer acted with discriminatory animus. Belfi v. Prendergast, 191 F.3d 129, 139 (2d Cir. 1991). In addition, the plaintiff must show that the employees to which he compares himself "shared sufficient employment characteristics with [him] that they could be considered similarly situated." McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). In other words, while the plaintiff need not show that he was similar to the comparators in all respects, he does bear the

---

[11] Duane Reade has not submitted substantial evidence regarding its criteria for hiring district managers. It appears from the record that selections are made based on personal recommendations and that objective criteria are not extensively employed. Although the absence of objective criteria does not, without more, show discriminatory intent, Buompane v. Citibank, No. 00 Civ. 7998(DLC), 2002 WL 603036, at *14 (S.D.N.Y. Apr. 18, 2002)(citing Lieberman v. Gant, 630 F.2d 60, 67 (2d Cir. 1980)), Duane Reade's inability to demonstrate that it relies only on race-neutral factors in making promotions leaves it more vulnerable to charges of discrimination.

burden of showing that they were "similarly situated in all material respects." Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)(citation omitted).

Fahmy points to four Caucasian managers -- John Livingston, Lynn Horn, Pierre Buchaillot, and Phil Lamberti -- who joined Duane Reade at approximately the same time he was hired and made "substantially higher salaries" than he did. (These managers were each hired at salaries of between $45,000 and $57,000 annually.) Although Duane Reade does not dispute this fact, it notes that these candidates were recruited by Duane Reade from other retail positions, had significant managerial experience, and demanded higher salaries than Fahmy: Horn was a drug store manager for 16 years when he was hired by Duane Reade, and requested a salary of $53,000; Buchaillot was a drug store manager for three years before he was hired, and requested a salary of $57,000; Livingston had worked for a year as an assistant manager and then manager at a drug store, and for three years as a department manager at a grocery store before joining Duane Reade, and requested a salary of $50,000; Lamberti was a retail sales supervisor for four years and an assistant supermarket manager for 18 years before being hired by Duane Reade.[12] By contrast, Fahmy had previously worked for a year and a half as an assistant manager at a drug store, and nine months as a manager in training for Duane Reade. He had also held jobs in the restaurant and airline industries. He requested a salary

_____

[12] Lamberti's salary request does not appear in the record.

of $42,000.

Fahmy does not produce any evidence to contradict these indications that he was not similarly situated to the four Caucasian managers in terms of previous experience or requested salary.  Instead, he asserts that certain statements on their applications were exaggerated, and notes that at least one of them had not previously worked as a drug store manager.  He also claims that he had "outstanding educational and work qualifications equal to or better than" theirs.  These bare assertions are insufficient to establish that Fahmy was similarly situated in all material respects to the Caucasian managers that he selected for comparison.[13]

Fahmy also makes reference to a list of Duane Reade's store managers, which he claims shows that 40% of Caucasian managers earned more than $50,000 annually, while only 25% of non-Caucasian managers earned that much.  He also claims that no Caucasians are paid less than $35,000, while 9% of minorities are.[14]  Even assuming the accuracy of Fahmy's calculations, these statistics do not support an inference of impermissible discrimination because he makes no effort to account for non-

---

[13] In his brief opposing defendants' motion, Fahmy also refers to two other Caucasian managers whose salaries were allegedly as much as $15,000 more than his.  Further, he points to three minority managers who make much less than "comparable Caucasian Store Managers."  Fahmy, however, provides no information about any of these managers' backgrounds or qualifications.  As a result, their relative salaries do not illuminate his claim.

[14] Duane Reade contests the latter claim.

discriminatory reasons for the disparity. <u>Bickerstaff</u>, 196 F.3d
at 450. Accordingly, defendants' motion for summary judgment
with regard to plaintiff's claim of disparate pay is granted.


III. Retaliation

Title VII provides that "[i]t shall be an unlawful
employment practice for an employer to discriminate against any
of his employees . . . because [such employee] has opposed any
practice made an unlawful practice by this subchapter. . . ." 42
U.S.C. § 2000e-3(a). Retaliation claims are, like other Title
VII claims, evaluated under the three-step burden shifting
analysis. <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 768
(2d Cir. 1998). First, the plaintiff must make out a prima facie
case; second, the defendant must articulate a non-retaliatory
reason for the action; third, if the defendant meets its burden,
plaintiff must produce evidence sufficient to raise a question of
fact as to whether the employer's proffered reason was mere
pretext for retaliation. <u>Id.</u> at 768-69.

In order to establish a prima facie case of retaliation, an
employee must show "(1) participation in a protected activity;
(2) that the defendant knew of the protected activity; (3) an
adverse employment action; and (4) a causal connection between
the protected activity and the adverse employment action." <u>Jute
v. Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 173 (2d Cir. 2005).
Fahmy has identified three conversations with Duane Reade
executives in which he allegedly raised the issue of

discrimination.  These conversations -- with Stein in August
2001, Rizzo in October 2001, and Rader in January 2002 -- qualify
as protected activity.  Fahmy's July 2003 filing of a complaint
with the EEOC is also protected.  Because the conversations at
issue were with Duane Reade executives, the company knew of these
protected activities.[15]  The only issues, then, are whether the
six events identified by Fahmy -- (1) he was denied a bonus to
which he was entitled; (2) he was "verbally humiliated" in front
of employees; (3) he had excess cash planted in his store safe
"in an attempt to discredit his integrity and falsely claim he
was stealing money" from the company; (4) he was issued a warning
concerning customer complaints; (5) he was routinely transferred
to problematic stores; and (6) he was repeatedly denied a
promotion to district manager -- constitute adverse employment
actions, and whether Fahmy has established a causal connection
between those actions and his complaints of discrimination.

        The Second Circuit has noted that although "there are no
bright-line rules" to determine when an employment action
qualifies as adverse, "an important consideration is whether the
action is one that would deter a similarly situated individual of
ordinary firmness from exercising his or her . . . rights."  Hoyt
v. Andreucci, 433 F.3d 320, 328 (2d Cir. 2006) (citation omitted)
(addressing the topic in the context of a Section 1983 claim for

---

[15] As noted above, Duane Reade disputes that Fahmy raised
charges of discrimination in some of these conversations.  But
for the purposes of this motion, Fahmy's version of the facts
must be credited.

retaliation).  In other words, such an action

> must be more disruptive than a mere inconvenience or an
> alteration of job responsibilities and might be
> indicated by a termination of employment, a demotion
> evidenced by a decrease in wage or salary, a less
> distinguished title, a material loss of benefits,
> significantly diminished material responsibilities, or
> other indices.

Patrolmen's Benevolent Ass'n. of City of New York v. City, 310

F.3d 43, 51 (2d Cir. 2002) (citation omitted).

There is no dispute that the denial of a bonus, the denial

of a promotion, the issuance of a disciplinary warning letter, or

the transfer to difficult stores constitute adverse employment

actions.  Fahmy's other allegations, however, do not.  In his

amended complaint, Fahmy alleges that Duane Reade tried to frame

him for stealing money by planting cash in his safe.  Fahmy has

not submitted any admissible evidence to support his assertion

that he was set up.  Moreover, he has not alleged that he was

subject to any discipline, demotion, or other punishment for the

incident that would qualify it as an adverse employment action.

Similarly, Fahmy's vague allegation regarding an incident of

verbal humiliation does not rise to a level that would allow

Duane Reade to be subject to liability for retaliation under

Title VII.  Therefore, plaintiff cannot show retaliation on these

bases.

For the remaining adverse actions, Fahmy must provide

evidence of a connection between them and his protected conduct.

If he does so, and if Duane Reade offers a non-discriminatory

explanation for the actions, Fahmy must then establish that the

proffered reasons are pretextual.

A. The "Shrink" Bonus

Fahmy argues that Duane Reade denied him the 2002 "shrink" bonus to which he was entitled in retaliation for his complaints. Eligibility for the bonus, which is purportedly paid to managers for controlling or reducing inventory loss in their stores, is determined based on a complicated formula incorporating a manager's tenure at a given store, a pre-established "shrink" target, and other factors. Plaintiff claims he should have been paid a bonus for his performance in 2002, while defendants claim he was ineligible. It is not necessary to determine whether Fahmy was wrongfully denied a bonus, since he has not established a causal connection between the bonus decision and his protected activities.

Mike Knievel, vice president of asset protection for Duane Reade, administered the shrink bonus program in late 2003, when the 2002 bonuses were determined. In an affidavit, Knievel has stated that he was not aware of Fahmy's internal complaints of discrimination, nor of any legal proceedings he had commenced against the company. Fahmy contests this statement, speculating that Knievel "would [have been] aware of any legal proceedings" by virtue of his executive position, but he offers no admissible evidence in support of this position.[16] Although the "lack of

---

[16] Fahmy also appears to argue that Knievel did not administer the program alone, but that Jerry Ray, the senior vice president of store operations, was involved. Fahmy's only

25

knowledge on the part of particular <u>individual agents</u> is admissible as some evidence of a lack of a causal connection," a jury could still find retaliation if it "concludes that an agent is acting explicitly or implicitly upon the orders of a superior who has the requisite knowledge." <u>Gordon v. New York City Bd. of Educ.</u>, 232 F.3d 111, 117 (2d Cir. 2000). Fahmy having produced no such evidence, however, he has not established the causal connection required for a retaliation claim.


B. The Customer Complaint Warning, Store Transfers, and Lack of
   Promotion

    Fahmy alleges that in 2002 and 2003, he repeatedly applied for and was denied a promotion to the position of district manager. He also contends the stores to which he was transferred during that period were difficult locations with many problems. Finally, he indicates that on July 25, 2002, he received a letter from Tony Picone, his district manager, reprimanding him for being the subject of multiple customer complaints. Fahmy claims that Duane Reade took all these actions in retaliation for his complaints to upper management, and the claim he filed with the EEOC.

    In the absence of direct evidence of retaliation, a plaintiff can show a causal connection for the purposes of

---

evidence for this contention is a memo sent from Ray to the store managers in early 2002 dealing with the broad outlines of the "2001 store manager bonus plan." This alone does not allow for a conclusion that Ray was involved in the administration of the shrink bonus program generally, much less in its application to Fahmy.

establishing a prima facie case by establishing "temporal proximity" between the adverse action and the protected activity. Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2003); see also Manoharan, 842 F.2d 590, 593 (2d Cir. 1988) ("Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."). The Second Circuit has not established a clear rule for determining how close in time the events must have occurred to create the presumption of causation, but the Supreme Court has noted that the "temporal proximity must be very close." Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001)(citing cases finding that three- and four-month gaps between protected activities and adverse employment actions are insufficient to establish causation).

The last protected conversation identified by Fahmy occurred in January 2002. The promotion decisions at issue were made in October 2002, February 2003, and March 2003. They therefore fall far outside the temporal window that would allow for an inference of retaliation. The same is true of the reprimand letter Fahmy received regarding customer complaints in July 2002, as well as Fahmy's transfer to store #156 in October 2002.

The only remaining allegedly retaliatory acts identified by Fahmy are his transfer to store #135 in October 2001 and to store #152 in January 2002. Although the transfer to store #135 occurred soon after Fahmy's conversation with Stein, and around the same time as his conversations with Rizzo, it cannot be

construed as a retaliatory act, given that Fahmy was given both a
promotion and a raise as part of the transfer.  Similarly,
although Fahmy's January 2002 transfer to store #152 was arguably
close enough in time to his October 2001 conversations with Rizzo
to support an inference of causation, it, too, was concurrent
with a raise.  And five months later, Fahmy's salary was
increased again.  Under these circumstances, a rational fact
finder could not determine that Duane Reade's decisions to
transfer Fahmy to allegedly difficult stores were made in
retaliation for his complaints of discrimination.  Therefore,
defendants' motion is granted with respect to plaintiff's
retaliation claim.


IV. Liability of Ray

     "Personal liability under section 1981 must be predicated on
the actor's personal involvement" in the discriminatory actions.
Patterson v. County of Oneida, N.Y., 375 F.3d 206, 229 (2d Cir.
2004).  Ray argues that he cannot be held liable under Section
1981 because Fahmy has not demonstrated that he was personally
involved in any of the actions that allegedly violated his
rights.  This is correct.  Fahmy's only evidence of Ray's
involvement is that his signature appears on Lamberti's
employment application; that he authored a memo regarding a bonus
program that was sent to store managers; and that an e-mail
indicates that Ray was to sign off on Fahmy's raise.  Even if
these facts indicated personal involvement by Ray -- and it is

doubtful that they do -- they relate entirely to claims as to which defendants' motion has been granted. Because Fahmy has produced no evidence relating to Ray's involvement in the surviving claims, defendants' motion for summary judgment is granted in its entirety with respect to Ray.

## Conclusion

For the foregoing reasons, defendants' motion is granted as to plaintiff's claims of disparate impact discrimination, disparate pay, and retaliation. Defendants' motion is granted as to all remaining claims with respect to defendants Duane Reade International, Inc. and Jerry Ray. Plaintiff's claim that Duane Reade, Inc. discriminated against him when it failed to promote him shall proceed to trial.

SO ORDERED:

Dated:    New York, New York
          June 9, 2006

                              _____
                              DENISE COTE
                              United States District Judge